# CHARLESTON

### HOLDERBY *v.* HAGAN *et al.*

Submitted February 22, 1905.   Decided March 14, 1905.

1.  BILL TO REMOVE CLOUD FROM TITLE.—*Allegations Therein—Proof.*
    In a suit brought to remove a cloud from the title to real estate, and to enjoin the prosecution of an action of ejectment brought to recover the same, one of the indispensable allegations of the bill is, that the plaintiff has title to the land, and, if an answer is filed de-

nying such allegation, or if the defendants, or some of them, who are claiming adversely to the plaintiff, are infants, the plaintiff must prove title. (p. 346.)

2.  BILL IN EQUITY—*Infants.*
    A bill in equity cannot be taken for confessed as to infants. (p. 346.)

3.  BILL IN EQUITY—*Pleadings—Infants.*
    Admissions in the answer of adult defendants do not bind infant co-defendants. (p. 346.)

Appeal from Circuit Court, Cabell County.

Action by Susan Holderby against C. E. Hagan and others. Decree for defendants, and plaintiff appeals.

*Affirmed.*

SWITZER & WYATT, and WILLIAMS, SCOTT & LOVETT, for appellant.

GORDON O'BEIRNE and R. L. BLACKWOOD, for appellees.

SANDERS, JUDGE:

In the circuit court of Cabell county, Susan Holderby filed her bill in equity against C. E. Hagan, C. B. Hagan, Beatrice Hagan, G. N. Hagan, Virginia Hagan and Annie Hagan, the last two of whom were infants, and C. B. Hagan, next friend of said infants, and the Huntington Loan and Investment Co., a corporation, claiming that all of said defendants, except the Huntington Loan and Investment Co., are the children and heirs at law of Mary C. and Bernard Hagan, both deceased, and that on the 10th day of May, 1883, by executory contract, the Central Land Co. sold to Barbara Hilton a lot in the city of Huntington, and that afterwards Barbara Hilton transferred and assigned her title bond for said lot to Mary C. Hagan then in life. That afterwards, on August 28, 1886, Mary C. Hagan, then being the equitable owner of said lot, made and executed her last will and testament, which is:

"Know all men by these presents:

"That I, Mary C. Hagan, wife of Bernard Hagan, of Huntington, County of Cabell, State of West Virginia, being of ill health but of sound and disposing memory, do make and publish this my last will and testament.

"I give and bequeath all my property, both real and personal, to my children; Charles E., Cornelius B., Mary V.,

George A., Clarissa V., and Annie B. to be equally divided among them, share and share alike.

"I do hereby nominate and appoint my husband, Bernard Hagan, to be the executor of this my last will and testament without bond.   And I further will that should my said husband, Bernard Hagan, desire to dispose of said property above bequeathed in any manner he may deem best for the interests of my said children, or shall desire to invest the proceeds of the sale of said property, in other property or securities for the benefit of my said children, he is hereby empowered to do so; and I further will that the said Bernard Hagan, my husband, shall have full and entire control of said property above bequeathed, or any other property or securities into which he may by powers herein granted convert it.

"In testimony whereof, I, the said Mary C. Hagan, have to this my last will and testament subscribed my name and affixed my seal this 28th day of August, 1886.

"Mary C. Hagan, (Seal)."

That Mary C. Hagan afterwards died, and the will was admitted to probate on July 3, 1899.   That at the time of her death the legal title was in the Central Land Co., and a portion of the purchase money due said company for the lot was still unpaid.   That on the 10th day of May, 1893, the Central Land Co., by its special receiver, C. P. Huntington, granted the said lot, subject to the life estate of Bernard Hagan, to the heirs at law of Mary C. Hagan, deceased.   On the 19th day of June, 1893, Bernard Hagan, in his own right and as executor of the last will and testament of Mary C. Hagan, deceased, conveyed to B. B. Harding the said lot, and on June 22, 1893, B. B. Harding re-conveyed the same to Bernard Hagan.   Afterwards, on July 11, 1893, Bernard Hagan conveyed the said lot in trust to Jas. K. Oney and Geo. E. McDonald, trustees, to secure to the Huntington National Building and Loan Association, by which name the Huntington Loan and Investment Co., one of the appellants herein, was formerly known, the payment of a loan of $1,200.   Bernard Hagan having failed to repay the loan at its maturity, the property was advertised and sold, and purchased by the Huntington Loan and Investment Co., and on the 31st day of January, 1895, conveyed to them by Jas. K. Oney, surviving trustee; and that, on the 28th day of October, 1899, the

Huntington Loan and Investment Company sold and conveyed to the plaintiff, Susan Holderby, the said lot, for the sum of $1,200. That afterwards Bernard Hagan departed this life, and the said heirs at law of Mary C. Hagan, deceased, instituted a chancery suit against the Huntington Loan and Investment Co., and Susan Holderby, for the purpose of recovering the possession and quieting the title to said lot, and which suit is still pending and undecided, there not having been any action taken upon the demurrer of the defendants, interposed to the bill; and that afterwards, in 1903, an action in ejectment was instituted by the said heirs at law of Mary C. Hagan against J. W. Herndon, the tenant of the plaintiff, in possession of said lot, and which is still pending, there being nothing further done in the case except to make up the issue.

And plaintiff also claims that the $1,200, loaned to Bernard Hagan by the Huntington National Building and Loan Association, was applied to the extinguishment of the remainder of the purchase money due the Central Land Co. for said lot, and certain other liens and claims against the same.

The plaintiff prayed for an injunction against the defendants, the heirs at law of Mary C. Hagan, deceased, enjoining and restraining them from further prosecuting the said action of ejectment, and that a decree be entered confirming plaintiff's right and title to the said lot, and removing the claim of the defendants therefrom; and confirming the right of Bernard Hagan, under said will, to convey said land by deed or deed of trust, and remove as a cloud upon her title to said lot any claim or right which the said heirs at law may set up under the said deed, or will from C. P. Huntington, receiver, or otherwise, and further praying that if such relief is not given, then that she be subrogated to the rights of the Central Land Co., and the various other creditors whose claims were paid out of the money borrowed by Bernard Hagan from the Huntington Loan and Investment Co. The bill was presented to the circuit court on the 17th day of July, 1903, and the injunction was granted as prayed for.

And later on an order was entered appointing Thos. R. Shepherd guardian *ad litem* for the infant defendants, Virginia Hagan and Annie Hagan, and the said infants, by their guardian *ad litem*, demurred to the plaintiff's bill, and, on

the 3rd day of November, 1903, filed their answer, denying all the allegations of said bill; and the defendants, C. E. Hagan, C. B. Hagan, Beatrice Hagan and G. N. Hagan, filed their joint answer, and admitted, among other things, the executory contract made by the Central Land Co. to Barbara Hilton for said lot, and its transfer and assignment to Mary C. Hagan.

The circuit court, upon a hearing, entered a decree dissolving the injunction, and dismissed the plaintiff's bill, and the plaintiff applied for and obtained an appeal and *supersedeas* from this decree.

Bernard Hagan never qualified as executor of the last will and testament of Mary C. Hagan, deceased, but the plaintiff claims that the will vested in him, as trustee, the power to sell the real estate, and that the power to sell, also included the power to mortgage, the same. If the plaintiff had shown title to this lot in Mary C. Hagan at the time of her death, then it would be necessary to construe the will, and to decide whether or not Bernard Hagan had the power thereunder to ·dispose of the property in the manner in which he did. But the evidence wholly fails to show any title whatsoever to this lot in Mary C. Hagan. It is true there is an allegation in the bill to the effect that she acquired title to this lot by assignment and transfer of the title bond which had been given to Barbara Hilton by the Central Land Co., but there is no proof ·to sustain this allegation. This is a material and absolutely essential allegation, and one of the links in the title under which the plaintiff claims, and without its establishment her title fails. And this suit, being based upon the theory of title in the plaintiff, and she being required to rely upon the sufficiency of her own title, and not upon the weakness of the title of her adversary, her suit would, therefore, necessarily fail.

It is true that the answer of the adult defendants, and heirs of Mary C. Hagan, deceased, admits the existence of the executory contract between the Central Land Co. and Barbara Hilton, and the assignment thereof to Mary C. Hagan. But the answer of the infant defendants, by their guardian *ad litem*, denies all the allegations of the bill; and, even if it did not do so, still it would devolve upon the plaintiff to prove the allegations of her bill before she could take a recovery

against the infant defendants, and this being a joint estate, there can be no recovery against the adult defendants, unless there can be a recovery against the infants. There must be a recovery against all, or none, and there being no proof of the existence of the contract between the Central Land Co. and Barbara Hilton, and the assignment thereof to Mary C. Hagan, there can be no decree against the infants; and if there can be no decree against the infants, there can be none against the adults. "If the suit be founded upon a joint demand based upon contract, and any one of the defendants successfully defends on a ground common to all of the defendants, which goes to the very cause of action itself, such defense inures to the benefit of all, notwithstanding the bill may have been taken for confessed as to those not defending, or they may have confessed their liability." Hogg's Equity Pro., section 607, and cases cited; *Findlay* v. *Cunningham*, 53 W. Va. 1; Barton's Ch. Prac., (2 Ed.), 836; *Cuitright* v. *Raymond*, 4 Leigh 579; *Brown* v. *Johnson*, 13 Grat. 644; *Steptoe* v. *Read*, 19 Grat. 10. "The answer of an infant, which must always be by guardian *ad litem*, is only a formal, yet necessary, pleading, and its admissions are not evidence against the infant, and the material allegations of the bill must be proved by independent testimony." Hogg's Equity Pro., section 448, and cases cited; *Stephenson* v. *Stephenson*, 6 Paige Ch. 353; *Balky* v. *Van Wyck*, 5 Paige Ch. 536; *Bank* v. *Patton*, 1 Rob. Rep. 499. "The answer of an infant defendant by his guardian is not evidence against him; material allegations in the bill must be proved by other means. It may, however, be evidence in his favor. Nor has the answer of an adult co-defendant any effect against an infant." 1 Ency. Pl. & Pr., 955. "Even the answer of the guardian *ad litem*, admitting the truth of the charges of the bill, cannot effect the infant's rights, but with respect to him all the allegations of the bill must be proved the same as if the answer had interposed a direct and positive denial of their truth; nor can a decree be taken for confessed against an infant." *Chaffin* v. *Kimball*, 23 Ill. 33; *McClay* v. *Norris*, 9 Ill. 370; *Cochrvn* v. *McDowell*, 15 Ill. 10. "No decree can be made against infants on the admissions in the answer of their guardian *ad litem*." *Wright* v. *Miller*, 1 Sandf. Ch., (N. Y.) 103; *James* v. *James*, 4 Paige 115.

From the authorities, uniformly, it is held that not even the admissions of the infant in his answer can be taken against him, but the plaintiff is required to prove each material allegation of his bill with the same certainty and clearness as would be required of him if an answer had been filed denying positively each allegation, and, *a fortiori*, the admissions in the answer of a co-defendant cannot bind him, although their interests may be joint.

Referring to the question of subrogation. It is difficult to see by what rule the plaintiff could be subrogated to the rights of the Central Land Co., and other persons having liens against the said lot. The bill shows that the money that was loaned to Bernard Hagan by the Huntington National Building and Loan Association was applied to the payment of these debts, long before the plaintiff acquired title to this property. She was not a privy to this transaction; there was no duty devolving upon her to pay off these liens against this land, and, as before stated, at the time she purchased the lot, according to the allegations of the bill, the liens had all been paid; but, even if they had not, she was a stranger to the transaction, there being no legal obligation or liability upon her to pay the debts.

It is entirely unnecessary to decide whether or not the plaintiff is entitled to subrogation, and it is enough to say that this allegation is without proof, and we are, therefore, not called upon to decide the question.

The decree of the circuit court is affirmed.

*Affirmed.*