## ·CHARLESTON.

BARTRUG *et al.* v. EDGELL *et als.*

Submitted April 10, 1917.   Decided April 17, 1917.

1. TRESPASS—*Adjoining Owners—Joint Suit for Trespass.*
   Persons owning in severalty adjoining tracts of land, enclosed as one boundary and used by them in common, may maintain a joint suit for trespass thereon.  (p. 222).

2. CONTINUANCE—*Pleading—Answer—Time—Affidavit of Cause.*
   A defendant who has failed to answer within the time prescribed by a rule issued against him by the court, upon overruling his demurrer to plaintiff's bill, may nevertheless file his answer at any time thereafter and before final decree, but he is not entitled to a continuance of the cause unless he files an affidavit showing good cause therefor.  (p. 222).

3. SAME—*Failure to Answer—Affidavit of Cause.*
   Such good cause does not consist simply in showing by affidavit that a continuance is necessary in order to enable defendant to take his proof, and that it was not possible for him to have taken it before the hearing, even if he had complied with the rule.  But the facts averred in the affidavit must also be such as will expurgate defendant of his default, by showing that he was prevented from complying with the court's rule by fraud, mistake, accident, surprise, or some adventitious circumstance beyond his control.  (p. 226).

4. EASEMENTS—*Presumption of Grant—Rebuttal.*
   Proof that the use of a way over another's land was by permission of the owner, expressly given at the request of the user, overcomes any presumption of a grant, and prevents such use from ripening into an easement by prescription.  (p. 227).

Appeal from Circuit Court, Wetzel County.

Suit for injunction by Abraham Bartrug and others against Clyde Edgell and others.  Decree for plaintiffs, and defendants appeal. ·

*Affirmed.*

*Thos. H. Cornett* and *M. H. Willis,* for appellants.

*M. R. Morris* and *H. H. Rose* for appellees.

WILLIAMS, JUDGE:

Defendants, Clyde Edgell, Ezra Edgell and Alice Edgell, have appealed from a decree perpetually enjoining them, their agents, employees and tenants from entering upon, crossing over, or in any manner trespassing upon two certain tracts of land described in plaintiffs' bill, containing 30 and 26 acres, respectively.

The plaintiffs, Abraham Bartrug and Jefferson D. Bartrug, own severally and in fee the aforesaid tracts of land, and brought this suit jointly. It is insisted that, being owners in severalty, they can not maintain the joint suit. But the bill alleges that the two tracts are contiguous, are enclosed as one boundary and used by plaintiffs in common, as a pasturage for their cattle. It also avers that Ezra Edgell and Alice Edgell are husband and wife, and Clyde Edgell is their son; that Ezra Edgell is the owner of a tract of 8 acres, adjoining the plaintiff Jefferson D. Bartrug's 26 acres on the south, and that Alice Edgell is the owner of 197 acres situate in the head of a hollow, adjoining the 30 acres owned by Abraham Bartrug, the other plaintiff, on the north; that all of the aforesaid lands lie within a narrow valley and extend some distance up the steep hillsides; that Clyde Edgell, the son, resides on the 8 acres and pastures his milk cows and other cattle on the 197 acre tract; that he drives his cows back and forth from one tract of land to the other, over the intervening lands of plaintiffs, four times a day, for the purpose of milking and feeding them; that, in doing so, he permits them to graze over plaintiffs' pasture and tramp and injure their sod; that, sometime prior to bringing their suit, plaintiffs had given defendants and their tenants permission to pass over their land, up and down said hollow, along a well defined roadway, but that, as said Clyde Edgell had abused the privilege, by suffering his cattle to scatter out of the road and over plaintiffs' land, eat the grass and tramp the sod, they gave defendants notice that the permission would no longer be accorded, and notified them of the fact, and forbade Clyde Edgell from further using the road, but that he disregarded the notice and persisted in driving his cattle over plaintiffs' land, claiming a legal right to do so.

The first assignment of error relates to the overruling of defendants' demurrer to the bill. The objection raised by the demurrer is that plaintiffs, being several owners of separate tracts of land, could not maintain a joint suit for a trespass thereon. This contention can not be maintained. The declaration avers that plaintiffs' two tracts are fenced up as one boundary and used by them in common; that defendants' trespass thereon affects both tracts in like manner, that, in passing from one of their tracts to the other, defendants necessarily pass over both of plaintiffs' tracts. Although their ownership is several, plaintiffs' occupation and use of their lands are joint. The alleged trespass is an interference with, and an injury to plaintiffs' joint use, and entitles them to join in seeking relief therefrom. The principle announced in *Snyder* v. *Cabell,* 29 W. Va. 48, is applicable here. We there held: ''Two or more persons owning separate and distinct tenements, whether they occupy the premises by themselves or by tenants, may together with the tenants, where the tenements are lessened in value or made materially uncomfortable as homes by a nuisance, which is a common injury to all the tenements and their residents, may join in a suit to restrain such nuisance.'' The same rule is declared by the following authorities: 1 High on Injunctions, (4th ed.), secs. 757, 793; *First National Bank of Mt. Vernon* v. *Sarlls,* 129 Ind. 201, 28 Am. St. 185; and Hogg's Eq. Proc., sec. 85. It is not intimated that the bill is otherwise defective. The demurrer was, therefore, properly overruled.

It is insisted that the court improperly overruled defendants' motion for a continuance of the cause, thereby denying them an opportunity to take proof in support of their answer. This is a perplexing question, and we have given it very careful consideration. Our conclusion is that no abuse of judicial discretion is shown. Plaintiffs' bill was presented in court, at a special term, on the 14th of June, 1915, and a temporary injunction was awarded on that day. Defendants were not enjoined from using the road in any manner, but were simply inhibited from permitting their cattle to stray out of the roadway and over plaintiffs' sod. On the

hearing of the application for an injunction, defendant Ezra Edgell filed his affidavit in resistance, denying the alleged acts of trespass and claiming a right by prescription to the use of the roadway. He also asked for a continuance for ten days, to enable him to prepare and file an answer for himself and his co-defendants, and to procure other affidavits in his defense. This request was apparently refused. We simply note this fact for the purpose of showing that defendants were then as fully advised of what their defense to the bill would be as they were later, and wanted only ten days in which to file their answer. No motion appears to have been made at any time for a dissolution of the injunction. But plaintiffs have shown commendable diligence in the preparation of their case for a final hearing. They took the depositions of themselves and other witnesses and filed them with the clerk on the 30th day of July, 1915. Defendants' counsel attended the taking of plaintiffs' proof and cross-examined their witnesses. At the July Rules there was a decree nisi, and at August Rules defendants appeared and demurred to the bill and plaintiffs joined therein, and the same was set down for argument. The first order in the cause thereafter was entered on the 22nd of January, 1916. It overruled the demurrer and ordered defendants to answer within thirty days from the adjournment of that term. That order recites that the demurrer was argued at the previous September term. The January term adjourned on the 1st of February, which gave defendants until the 2nd day of March, 1916, to file their answer, but they failed to do so. An order entered on the 9th of March recites that the parties appeared on that day, by their respective counsel, and defendants tendered and asked leave to file their joint and several answer, duly verified, and the same was permitted to be filed, and plaintiffs replied generally thereto. Plaintiffs then moved for a submission of the case, and defendants objected and also moved for a continuance for the purpose of enabling them to take proof in support of their answer, and to this motion plaintiffs objected. Both motions were then argued by counsel and the court took time to consider thereof until March 11th. Defendants also moved that plaintiffs be

required to supply certain exhibits filed with their bill, but not found in the file of papers. The absence of these exhibits is really not material; they were only filed to prove plaintiffs' title, and the answer admits their title. The bill avers plaintiffs' joint possession and use of the two tracts upon which the alleged trespass was committed and the answer does not specifically deny it. The bill is maintainable on their joint possession. On the 11th of March the parties again appeared by counsel, and defendants renewed their motion for a continuance and tendered in support thereof the affidavit of Thomas H. Cornett, one of their counsel. The court refused to permit the affidavit to be filed, overruled the motion for a continuance, sustained plaintiffs' motion for a submission and took the case under consideration for final disposition, giving to opposing counsel permission to lodge briefs with the judge in the meantime, and defendants excepted. On the 5th of April the parties again appeared, and defendants moved the court to set aside its order of submission, and renewed their motion for a continuance, tendering in support thereof the affidavit of M. H. Willis, of counsel for defendants, and also the previously rejected affidavit of Thomas H. Cornett. The court permitted the affidavits to be filed, but overruled the motion for a continuance.

Counsel insist that, under the circumstances shown by the affidavits to exist, the court abused its discretion, to the great prejudice of defendants. Having failed to answer within the thirty days fixed by the court's rule of January 22nd, defendants were in default, and the excuse for non-compliance with the rule, appearing by the affidavits filed, is not sufficient in law. It is, that a special term was held during the most of the period of thirty days, beginning on the 1st day of February, when the regular term adjourned, and expiring on the 2nd of March, that most of the time of counsel was occupied with other very important legal business, and that, for a part of that time, one of said attorneys was absent from the county in attendance upon other important legal business. It does not appear that one or the other of said counsel could not have prepared defendants' answer within the time prescribed. But we do not wish to be understood as intimating

that, if it did appear that all their time had been taken up with other pressing business, it would furnish a sufficient legal excuse for disobedience of the rule. The court, no doubt, considered the fact that counsel had much other legal business to attend to when it gave so long time as thirty days after the term should adjourn in which to prepare and file defendants' answer. Counsel were evidently informed by Ezra Edgell's affidavit, filed on the 14th of June, 1915, of defendants' defense, and surely one or the other of them could have found time between the 22nd of January and the 2nd of March to prepare and have defendants verify their answer. That the court was not sitting between February 21st and March 7th is no excuse. The answer could have been prepared and lodged with the clerk, if the court was not sitting to receive it. It was certainly not contemplated, when the rule was awarded, that the court would be sitting, in special term, throughout the thirty days to receive the answer, but rather that it would be prepared and lodged with the clerk in vacation. That it was not possible to have given notice and taken proof in support of the answer, even if it had been filed in the time prescribed, is not a material matter in determining whether or not defendants have shown a legal excuse for their default in answering, nor is the fact that they were only seven days late in filing their answer entitled to any weight. One day overtime would have put them in default and denied them a continuance as matter of right. Not having answered before their demurrer was passed upon, as they might have done by virtue of sec. 20, ch. 125, Code, the court had the right, on overruling defendants' demurrer, to prescribe the time for them to answer. Sec. 30, ch. 125, Code. These statutes are designed to expedite hearings of causes. Defendants' failure to comply with the rule to answer, which was certainly a very reasonable one, entitled plaintiffs to a decree for the relief prayed for. Sec. 30, ch. 125. And although sec. 53 of the same chapter gives a defendant an absolute right to file his answer at any time before final decree, it does not conflict with that provision of the former denying to a defendant, who is in default, a continuance without an affidavit

showing good cause. therefor. The court was, therefore, bound to receive defendants' answer, even though tendered after the time prescribed, but whether a continuance should be granted was a matter depending on sound judicial discretion in determining whether good cause therefor was shown. *Waggy* v. *Waggy*, 77 W. Va. 144, and *McLaughlin* v. *Sayers*, 72 W. Va. 364. Defendants are in no more favorable position than they would have occupied if they had not demurred to the bill. They are in default and are, therefore, not entitled to demand a continuance as of right, as perhaps they might do if they were not in default. The statute requires them to show good cause therefor.

What is good cause? Is it only that a continuance is necessary, in order to enable a defendant to take his proof; or that it was not possible for him to have taken his proof within the time prescribed by the rule to answer? We do not think so. If that constituted good cause, it would make continuances possible in almost every case wherein a defendant is in default. It would then only be necessary for him to be prepared with his answer and affidavit, tender them at the very moment the court is about to pronounce its final decree, and get a continuance of the cause. Such a construction of the terms would encourage dilatory tactics, so prevalent under the common law rules of procedure, and would tend to defeat the very purpose of the statute, which was to speed the hearing of causes. The good cause necessary to a continuance is a showing of such facts and circumstances as will expurgate defendant's default, by furnishing a legal excuse therefor, as well as proof of the necessity for a continuance for taking of proof. It embraces past conduct as well as future necessity. It is similar in character to the grounds, necessary to be shown, in order to entitle a party, who has failed to take an appeal from the judgment of a justice within ten days, to obtain one from the judge of a circuit court; or such showing as entitles a party, who has suffered a judgment by default to be entered up against him in court, to have it set aside and the cause reopened, that is, it must be that a defendant has been prevented from obeying the rule of the court by fraud, mistake, accident, sur-

prise, or some adventitious circumstance beyond defendant's control. *Wilson* v. *Kennedy,* 63 W. Va. 1. Measured by this rule, the affidavits, filed in the present case, fall far short of the requirement. The policy of the law, indicated by the numerous statutes amendatory of the common law rules of pleading, is to expedite the hearing of cases as speedily as is consistent with a sure administration of justice. The affidavits, being insufficient to show good cause for a continuance, the right thereto is determinable by the same rules applied in the two cases of *Waggy* v. *Waggy,* and *McLaughlin* v. *Sayers, supra.* In fact, the statute denies them the right to it. The rule may operate harshly in the present instance. But it is general in its scope and must be likewise generally applied. It is prescribed for the guidance of litigants in the prosecution of their suits and the preparation of their defenses, and can not be varied in order to avoid apparent hardships in particular cases. If its application, in this case, does, in fact, operate to defeat justice,—a matter which the court can not know without having defendants' proof, as well as plaintiffs' before it,—defendants can have no reason to censure the court therefor. The legal maxim of universal application is, that all persons are presumed to know the law.

But, it is insisted that plaintiffs' proof is not sufficient to support their allegations, and the injunction should have been dissolved on their own proof. This contention is hardly maintainable. Although plaintiffs' evidence does show that a well marked roadway had existed for very many years up the hollow, between defendants' two tracts of land, over plaintiffs' intervening lands, and was used by defendants' predecessors in title, who owned and occupied the 197 acres, still it also appears that, for a great portion of that time, the 197 acres and the two tracts, now owned by plaintiffs, were owned by the same person. Neither does it appear that the use was adverse and under a claim of right. On the contrary, Abraham Bartrug swears that defendants merely had a license from plaintiffs to use the road, that Ezra Edgell came to them and requested that their tenant, one Cain who lived on the 8 acres, might use the road, and they gave them and their tenants permission to do so. It thus appearing

that the use was merely permissive, it could not ripen into a right by prescription. Proof of a user by license overcomes the presumption of a grant which would otherwise arise from a long continued use under claim of right. Nor is the evidence sufficient to show that defendants are entitled to the easement as a way of necessity. We are, therefore, constrained to affirm the decree.

*Affirmed.*